**XIAO LIAN JIANG, Yong Hua Zhou, Petitioners,**

v.

**Alberto R. GONZALES, Respondent.**

Nos. 05–4631–ag (L), 05–4633–ag (Con).

United States Court of Appeals,
Second Circuit.

Sept. 6, 2006.

Thomas V. Massucci, New York, New York, for Petitioner.

Drew H. Wrigley, United States Attorney for the District of North Dakota; Jennifer Klemetsrud Puhl, Assistant United States Attorney, Fargo, North Dakota, for Respondent.

PRESENT: Hon. DENNIS JACOBS, Hon. ROBERT D. SACK, Hon. PETER W. HALL, Circuit Judges.

## SUMMARY ORDER

Petitioners Xiao Lian Jiang and Yong Hua Zhou, natives and citizens of the People's Republic of China, seek review of identical July 25, 2005 orders of the BIA affirming the June 10, 2003 decision of Immigration Judge ("IJ") Sandy K. Hom denying petitioners' application for asylum and withholding of removal. *In re Xiao Lian Jiang*, No. A 72 460 209 (B.I.A. July 25, 2005), *aff'g* No. A 72 460 209 (Immig. Ct. N.Y. City June 10, 2003); *In re Yong Hua Zhou*, No. A 72 432 476 (B.I.A. July 25, 2005), *aff'g* No. A 72 432 476 (Immig. Ct. N.Y. City June 10, 2003). We assume the parties' familiarity with the underlying facts and procedural history in this case.

When the BIA summarily affirms the decision of the IJ without issuing an opin-

ion, *see* 8 C.F.R. § 1003.1(e)(4), this Court reviews the IJ's decision as the final agency determination. *See, e.g., Twum v. INS,* 411 F.3d 54, 59 (2d Cir.2005); *Yu Sheng Zhang v. U.S. Dep't of Justice,* 362 F.3d 155, 159 (2d Cir.2004). This Court reviews the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see, e.g., Zhou Yun Zhang v. INS,* 386 F.3d 66, 73 & n. 7 (2d Cir.2004). However, we will vacate and remand for new findings if the agency's reasoning or its fact-finding process was sufficiently flawed. *Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 395, 406 (2d Cir.2005); *Tian–Yong Chen v. INS,* 359 F.3d 121, 129 (2d Cir.2004); *see also Xiao Ji Chen v. U.S. Dep't of Justice,* 434 F.3d 144, 158 (2d Cir.2006) (agreeing with this principle, but avoiding remand, in spite of deficiencies in an adverse credibility determination, because it could be confidently predicted that the IJ would adhere to the decision were the case remanded).

When making his adverse credibility determination the IJ relied on eleven instances of what he characterized as "inconsistent and contradictory" evidence. Upon reviewing the record, however, it appears that six of these eleven determinations are ill founded and only five are supported by the evidence. As a result we cannot state with confidence that the agency would make the same decision on remand. For that reason we must remand this case for further consideration.

The record supports the IJ's determination that the following five instances are in fact contradictory or inconsistent. First, Jiang testified in 1994 that she had an IUD insertion within two or three months of giving birth to her son in September, 1984 **[JA 948]** but stated in her written application that the family planning officials contacted her in February, 1985, at least two months later. In addition, Zhou testified in 2003 that the contact happened in January 1985. **[JA 1209]**. Aside from the fact that Zhou later corrected his statement to assert that the contact occurred in February, 1985 *id.,* this contradiction is supported by the record. Second, Jiang testified that she had the IUD inserted on February 23, 1985 **[JA 74]** but Zhou testified that the procedure occurred on either February 18, 19, or 20 **[JA 1209]**. Third, a birth notarial indicates that Jiang's second child was born in Yongjia county **[JA 1759]**, but Jiang testified that her daughter was born in Mongolia **[JA 962–63]** and then altered her testimony to state that she was born in Yongjia county **[JA 85]**. Fourth, Jiang never testified about the 10,000 yuan fine for giving birth to an "excess third child" that was levied on her by the Wuniu Town government. Fifth, the details of the 1985 meeting between Jiang and the family planning officials are unclear. Jiang testified in 1994 that the family planning officials told her about the required IUD insertion **[JA 948]**, but in 2003 she testified that she was not at home when the officials arrived and that they told her father about the IUD who, in turn, relayed that communication to her.[1] **[JA 72–73]**.

---

1. In her 1994 testimony Jiang was asked who told her about the IUD and she simply responded "the Family Planning Committees." Therefore, Jiang may have meant that the family planning officials actually talked to her father rather than her. Petitioners argue that

this inconsistency would have been resolved had Jiang been given her rightful opportunity to explain her statement. However, in their appeal before the BIA, petitioners never argued that Jiang should have been given an opportunity to explain the statement. When

Three of the five determinations above, although supported by the record, are either collateral to petitioners' claims or trivial date-based inconsistencies. These three instances, standing alone, would not have supported an overall adverse credibility determination. *See Latifi v. Gonzales,* 430 F.3d 103, 105 (2d Cir.2005) (holding that an adverse credibility determination could not be supported by insignificant and trivial discrepancies). On the other hand, two of the IJ's determinations above were both material and supported by the record: specifically, Jiang's contradictions regarding the birth place of her second child and petitioners' failure to testify about incurring a fine for their "excess third child." While these five instances taken together may support an adverse credibility determination, the problem for us is that the IJ also relied on an additional six instances in the record that he determined to be contradictory or inconsistent, and those six determinations are not supported by the record. Five of the six are based on misunderstandings of the record. The sixth is unsupported because it is based on speculation.

■ First, Jiang testified in 2003 that the family planning officials "do not know" about her second child. The IJ found this to be inconsistent with the planning officials' sterilization order, reasoning that the officials would not have issued the order if they believed at the time that Jiang had only one child. The record, however, demonstrates a confusing set of interchanges on this point, aggravated in significant part by the fact that either Jiang or her interpreter spoke predominantly in the present tense.[2] Read through this lens, the record shows that after Jiang testified that the planning officials "do not know" about her second child, [JA 101] she went on to testify that the planning officials had subsequently "heard" of the child through rumors, gave sterilization orders based on those rumors, [JA 105] and found out about all three of her children when she applied for their birth certificates in 1993. [JA 101–02]

For the same reason, Zhou's statement that Jiang's father was detained a second time because the family planning officials had learned of Jiang's second child through rumors [JA 1214–15] is not inconsistent with Jiang's assertion that the officials "do not know" about her child.

■ The third unsupported determination is also based on Jiang's statement that the officials "do not know" about her second child. Specifically, the IJ found it inconsistent that petitioners would have been fined for having an "excess third child" if the government still did not know of all of Jiang's children. However, the notice of the fine for the "excess third child" is dated "February 1993" [JA 1805], and Jiang testified that the government learned of all three of her children once she applied for their birth certificates in 1993. [JA 101–02]

■ Fourth, Jiang testified in March 2003 that the government gave no reason for its refusal to refund the fine paid by Jiang's brother to secure his father's re-

an applicant fails to raise an issue before the BIA, this court may not hear an appeal on that issue unless the government waives the exhaustion argument. *Lin Zhong v. U.S. Dep't of Justice,* 461 F.3d 101 (2d Cir.2006). In this case the government argued that petitioners failed to raise this point before the BIA. **[Red 30]** Therefore, this court will not consider whether Jiang was entitled to an opportunity to be confronted with and to explain any inconsistent statements.

2. Throughout her testimony Jiang speaks in the present tense about past events. Her statement "[t]he second child they don't know." **[JA 101]** coupled with her statement "[i]f at that time they find out they take me for sterilization right away" *id.* is illustrative.

lease from his second detention. [JA 99] The IJ found that testimony inconsistent with Zhou's April 2003 testimony in which, according to the IJ, Zhou explained that the government refused to refund the fine because it had heard rumors that Jiang had a second child. The record, however, shows that Zhou had only been asked to explain the reason for Jiang's father's second detention; he was never asked to explain why the fine was not refunded. [JA 1215]

■ Fifth, the IJ misunderstood both Jiang and Zhou to have testified that the government had demanded from Jiang's brother both a fine and a sterilization certificate covering Jiang before it would release Jiang's father from his second detention. The IJ found it impossible under those circumstances that Jiang's father could have been released in November 1988 because Jiang's sterilization did not occur until January 1989. The IJ misapprehended the record since both Jiang and Zhou consistently testified that Jiang's brother promised the officials he would pay the fine before his father's release and would produce the sterilization certificate sometime after his father's release. [JA 107, 1216].

■ Sixth, there was no basis in the record for the IJ to find it implausible that the family planning authorities would, on two separate occasions, substitute a request for a physical examination to determine whether Jiang had violated the family planning policy, for an agreement to pay fines. The IJ's speculation in this regard cannot support an adverse credibility ruling. *See Xiao Ji Chen,* 434 F.3d at 159 (holding that IJ impermissibly speculated in finding implausible a petitioner's claim that she worked during the early months of her pregnancy).

Because it cannot be stated with confidence that the agency would make the same decision on remand if left only with the material determinations regarding the petitioners' credibility that are supported by the record, we must remand this case on all three of petitioners' claims for relief. *See Xiao Ji Chen,* 434 F.3d at 162; *Cao He Lin,* 428 F.3d at 395.

For the foregoing reasons, the petition for review is GRANTED, the decision of the BIA is VACATED, and the case REMANDED for further proceedings consistent with this decision. Having completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DENIED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34(d)(1).